EASTERN DIST.
*February*, 1838.

FRANK, *f. m. c.,* vs. POWELL.

APPEAL FROM THE COURT OF THE THIRD JUDICIAL DISTRICT, FOR THE
PARISH OF WEST FELICIANA, THE JUDGE THEREOF PRESIDING.

A slave, brought into the state of Ohio, whose constitution and laws forbid
slavery and involuntary servitude, and placed on service by his owner,
to an innkeeper, becomes free and emancipated by the operation of law.

Every man is presumed to have consented to the necessary and legal
consequences resulting from his removal to another state, under the
operation of its laws.

It is from the *intention* of the owner to remove and reside with his slave in
a free state, that the emancipation results, immediately on such removal.

This is a suit for freedom: the petitioner claims to be a
free man of color; alleges he was born at Pittsburgh, from
whence he removed to Cincinnati; that after his removal
there, and since he attained the age of twenty-one years,
(being twenty-nine at the institution of this suit,) he was
seized and delivered to one Harris, and carried into the state
of Kentucky; and after much cruel treatment he was passed
into the hands of one Thomas Powell, who brought him to
this state, and now resides in the parish of West Feliciana;
that Powell holds him in slavery, and offers to sell him for
the sum of one thousand five hundred dollars. He alleges
that he is free, and claims his liberty, and prays to have his
liberty decreed to him, and that the defendant be condemned
to pay one thousand dollars for the illegal detention of him
in slavery.

The defendant pleaded a general denial, and averred that
the plaintiff was born a slave, and is yet one, and is his
property. He prays that the demand be rejected and this
suit dismissed.

The case was tried upon these pleadings and issue.

The district judge summed up the whole testimony, and
concluded, that even if the plaintiff was a slave when he
was taken to Cincinnati, in the state of Ohio, to reside, he

became free from the fact of residing there with the consent and approbation of his then owner. According to a decision of the Supreme Court, " the constitution of the state of Ohio emancipates, *ipso facto*, such slaves whose owners remove them into that state with the intention of residing there."

Judgment was rendered in favor of the plaintiff, and the defendant appealed.

*Bullard*, for the plaintiff, contended, that the plaintiff was free from his birth, being born in Pennsylvania, where slavery is prohibited; but after he was taken to Ohio, he became, *ipso facto* free, when it is shown he was removed there by and with the consent of the person claiming to be his owner. 5 *Martin*, 666. 2 *Martin*, *N. S.*, 401. 8 *Ibid*, 699. 7 *Louisiana Reports*, 170. 9 *Ibid*, 210, 473.

*Boyle and Johnson*, for the defendant. The plaintiff was born of a slave mother, at Pittsburgh, while her owner was detained there by sickness. This does not entitle him to freedom, although born in a free state, for there was no intention to reside, and the stay and circumstances of his birth there, being merely accidental.

2. The evidence is not conclusive, that the plaintiff resided in Cincinnati with the consent of his owner. The latter was travelling through from Maryland to Kentucky with his slaves when the plaintiff was born, and there is no proof that he actually resided in Ohio, or was permitted to live there by his owner. The case in 8 *Martin*, *N. S.*, 699, is not like this, because the evidence was different. The defendant should, therefore, be confirmed in his right to hold the plaintiff as his slave.

*Martin*, *J.*, delivered the opinion of the court.

The defendant is appellant from a judgment which recognizes the freedom of the plaintiff, claimed by the former as his slave.

The plaintiff was born in Pittsburgh, in the state of Pennsylvania, of a slave accompanying her owner on a

journey through that state, during a stay he made in that
town while he was detained by sickness, and the inclemency
of the weather.   He was afterwards, while a lad, brought
by a person who had purchased him on the death of the
owner, from his mother, to Cincinnati, where he was hired
to an inn-keeper, on an understanding, that as soon as his
wages would produce one hundred and fifty dollars to the
person who hired him, he should be free.   He remained but
a few weeks with the inn-keeper, and eloped; he was after-
wards taken, brought over to Kentucky, where he was
purchased by the defendant.

On these facts the District Court was of opinion, that the
plaintiff was born free; and that if he was not, he had
acquired his freedom, on his being brought and hired in the
state of Ohio, the constitution of which, provides, that there
shall be neither slavery nor involuntary servitude in that
state.   In the case of Merry *vs.* Chexnaider, 8 *Martin,
N. S.*, 699, we held, that a negro, born in the north-western
territory of the United States after the ordinance of 1787,
was necessarily free.   We have not inquired whether the
circumstance of the plaintiff's being born in Pennsylvania,
where his mother was at the time of his birth, transiently in
that state, forms an exception to the general rule on which
that case was decided, because the decision of the present
does not require it.   The plaintiff having been brought or
left in Cincinnati, in the state of Ohio, by the person who
claimed to be his owner, for the purpose of serving an
inn-keeper, until the sum of one hundred and fifty dollars
was received for his hire, comes within the rule recognized
in the case of Lumsford *vs.* Coquillion, 2 *Martin, N. S.*, 401.
We there held, that the plaintiff, having been brought into
the state of Ohio by her then owner, the latter had submitted
himself and the property he brought with him, to the
operation of the constitution and laws of that state.

Every man is presumed to have consented to all the
necessary legal consequences of his actions.   The emanci-
pation of a slave brought into the state of Ohio, is the
necessary legal consequences of his removal thither; and his

A slave brought into the state of Ohio, whose constitution and laws forbid slavery and involuntary servitude, and placed on service by his owner to an inn-keeper, becomes free and emancipated by the operation of law.

Every man is presumed to have consented to the necessary and legal consequences, resulting from his removal to another state, under the operation of its laws.

It is from the intention of the owner, to remove and reside with his slave in a free state, that the emancipation results, immediately on such removal.

former owner, by whose agency his removal is effected, must have presumed to have consented to that emancipation.

The plaintiff was, with the consent of his former owner, to have remained in Cincinnati for an indefinite period; and his elopement, shortly after, does not weaken the proof which results from the conduct of the master, that his intention was, that the plaintiff should continue to reside in the state of Ohio during the period for which he was hired. It is, from this intention, that the emancipation results. The record contains another presumption of the consent of the master to the residence of the plaintiff in Ohio. It appears that the latter resided a considerable time in the family of Williamson, the son-in-law of the former, in Cincinnati.

Our attention has been drawn to the case of the United States vs. the ship Garonne, (11 Peters,) in which the Supreme Court of the United States held, that the ship was not forfeited, in consequence of a slave who had followed her mistress on a voyage from New-Orleans to France, having been brought back in her with the intention of retaining the slave in her service. From this decision the inference has been drawn, that the court considered that the slave had not acquired her freedom on her being landed in France. It has appeared to us, from a close examination of the opinion of the court, that the court decided only, that the return of a slave from a voyage from New-Orleans to France, could not be considered as the importation of a negro from a foreign country, in violation of the acts of Congress. The object of these acts was to put an end to the slave trade from foreign countries, and to prevent the increase of the slave population of the United States. A lady, visiting France, attended by one of her slaves, and returning with her, could not be considered as having been engaged in the slave trade, or as having added to the slave population of the United States. The decision cannot be bottomed on the ground of a person who is free in the country from which the ship last sailed; for if the ship had brought from Martinico a negro, to be held as a slave in the United States, the act of congress would have been equally violated if the negro had been

purchased from his owner in that island, as if a free negro had been kidnapped.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.

